F. W. WOOLWORTH CO., INC., *v*. PATRICK.

(Division B.    May 4, 1936.)

[167 So. 774.    No. 32191.]

Leathers, Wallace & Greaves, of Gulfport, for appellant.

Bidwell **Adam**, of Gulfport, and **Chalmers Potter** and Henry **E. Barksdale,** both of Jackson, for appellee.

714

Argued orally by **James A. Leathers,** for appellant, and by **Henry E. Barksdale,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court:

The appellee, Mrs. Enola Patrick, was plaintiff, and brought suit in the circuit court of Harrison county against the F. W. Woolworth Company, a corporation, for personal injuries claimed to have been sustained by falling down stairs leading from the floor of the appellant company to an office situated in a balcony to which the stairway led. She alleged that it was the duty of the appellant company to keep this stairway in a reasonably safe condition so that patrons might ascend and descend same without endangering their lives or health. She also alleged that she had gone up this stairway for the purpose of securing an article which had been left in the store, and had descended about half way, when, because of the worn, split, loose, unsafe, and dangerous condition of said steps, and particularly one step, she was caused to fall forward and down said stairs a distance of six or eight feet, striking her head, body, limbs, and back upon said steps, which fall resulted in painful injuries to her head, body, limbs, female organs, and kidneys, requiring her to engage the services of a physician, and to expend, at least, five hundred dollars for medical treatment, and that she has already expended several hundred dollars for medical services.

The appellee's testimony as to the condition of the stairs is not corroborated by any witnesses, and her cause depends upon her own testimony. The fact that she fell is corroborated by a lady who was with her, and also by the appellee's daughter who was in the car outside. This daughter of the appellee testified as to the condition of her mother when she came out of the store. The appellee testified as to the condition of the stairs as follows:

"Q. Tell the condition of the steps. A. As I stepped on the edge of the steps my foot gave with me, it was worn, and I went down, and my feet crumbled under it, and I was going down and falling, and I realized if I went to the bottom and hit from the place where I was, I knew that I would break my neck." (Objected to and motion to exclude.)

By Counsel: "That's all right, don't tell that. A. Well, as I fell down and got almost to the bottom, I threw myself over and grabbed to the railing, and bruised my back and both legs, and my right ankle had a big knot, and I was stupid, and this lady picked me up, and these girls were standing around there, and not one of them said to me 'Are you hurt?'" (Objections sustained by the court saying, "Don't pay any attention to what the witness says about the conduct of the girls.") "A. (Continuing) Well, I fell down."

By counsel for defendant (defendant renews objections to the testimony with reference to the condition of the steps and injuries received. Objection overruled).

"Q. You stated a moment ago that you stepped on this step and it was worn and gave away? A. Yes, sir.

"Q. State to the jury whether or not that step, when you stepped on it, was securely nailed and fastened. A. It was so terribly worn when I went up there I saw it was worn, and I thought I had to be careful, and in my own mind I wondered how they could go up and down. . . . As my heel got here, like this, and I am not heavy on my feet, and I went down gradually,

and this edge gave with me, and I went on down; I did not run up or down the steps, I was going normally because I knew the steps were bad. . . .

"Q. You stated that the step was worn? A. Yes, sir.

"Q. And gave with you, what do you mean when you say it gave with you? A. The ball of my foot hit the edge of the step, and threw me over enough to throw me on my head.

"Q. Did it raise? A. I don't know. I know this part was worn on both sides, and my heel hit in here, and I went down, and this part of the edge did like that, and I went down, all of them went that way.

"Q. What do you mean? A. They were worn up here, and this was the edge of the steps, and it did like this.

"Q. What do you mean when you say 'it did like this?' A. You know how steps bulge up, and this part gave down enough with me, and I felt the jar, and fell and tumbled down upon my head. . . .

"Q. State to the court what injuries you sustained. Just go ahead and start from the top and going down. A. My side of my head was bruised, and my arms, each one was marked and black and blue to my elbow—both of my arms—and my arms were all bruised and my back, and this hip, and both of my shins and ankles, and my right ankle had a big knot on the edge, and I thought the bone was broken, and I was bruised all over, and I was stunned when I got to the bottom of the steps, and this lady picked me up and held me up, and I got to the car and my daughter suggested I call a doctor. . . .

"Q. Did you sustain any permanent injuries as a result of that fall? A. I was in bed for four of five days after that, and I thought we should have a doctor—they thought we should have a doctor. and I said, 'No, we will wait and see,' " (Objected to. By the court, "Don't tell about any conversations you had with any one.")

"A. I was so ill, and I was terribly sick for five or six days, and in bed, and I was bruised up, and my back,

they were always putting hot application to me and my ankle were put in hot salts, and I had a knot on my ankle, and it bothered me through the Winter, and it is sore today."

The appellant introduced numerous witnesses, some of them its employees who used the steps several times each day, and several parties who were not its employees, but who had observed the steps, and these witnesses testified that the steps were somewhat worn, but they were not loose, and that no one had ever suffered any inconvenience from this worn condition of the steps.

Neither the plaintiff, appellee here, nor the witnesses for the appellant, gave any clear, definite description of the worn condition of the steps. It will be noted from the testimony of the appellee that she does not say the steps were loose. It is clear that she was under the impression that the steps gave away with her, but, when asked directly as to whether the steps were loose, she did not know. As to her injury, she did not place any of the physicians who treated her on the stand to testify as to the extent thereof, but she did call other physicians who testified as experts, having listened to her statement of the facts, and their testimony shows that it was reasonably possible that her injuries might result in a permanent disability.

The testimony nowhere shows, with reasonable certainty, or with any degree of probability, that the steps were loose or insecurely fastened. From the testimony of numerous witnesses testifying for the appellant, it appears that the steps were secure in their position, and that none of the employees in the store, at the time the injury is said to have occurred, remembered anybody falling.

We think that the appellee's testimony indicating that the steps were loose is overwhelmingly contradicted by the witnesses for the appellant, and that it is very doubtful if her testimony is sufficient to show that the steps were worn to such an extent as to make them dangerous

when used by a person of ordinary care in the usual method. In order to establish danger from the worn condition of the steps, the proof should show, not only that the steps were worn, but that they were in such an unsafe condition as to make them dangerous for use in the ordinary way by persons exercising common care.

After a full consideration, it is our conclusion that the testimony on the part of the appellee is contrary to the overwhelming weight of the evidence; and we are of the opinion that this cause should be reversed and submitted to another jury.

Reversed and remanded.